IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SHELDON CUMMINS,**

      **Petitioner,**

**v.**

                                    **No. 14-cv-0558 LH/SMV**

**JOSEPH GARCIA and
HECTOR BALDERAS,**

      **Respondents.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody [Doc. 1] ("Petition"), filed June 17, 2014. Respondents answered on August 11, 2014. [Doc. 11]. An amended Answer was filed on September 21, 2015. [Doc. 48]. Petitioner filed his Reply on October 7, 2015. [Doc. 49]. The Honorable C. LeRoy Hansen, Senior United States District Judge, referred this matter to me for analysis and recommendation of an ultimate disposition. [Doc. 4]. Having considered the parties' submissions, the record, the relevant law, and being otherwise fully advised in the premises, I recommend that the claims be DENIED and the case be DISMISSED with prejudice.

**Factual Background**

Petitioner was convicted of aggravated battery and aggravated assault with a deadly weapon. [Doc. 11-1] at 19. The convictions arose from an altercation between Petitioner and his landlord.[1]  *Id.*; CD Recording of Trial, File No. CR 1_20130212-1612_01ce93bc1a52870

---

[1] Petitioner was convicted of two counts of aggravated assault. [Doc. 11-1] at 1. One of the assault convictions was

at 27:11. At Petitioner's trial, the landlord testified that Petitioner struck him with a hammer, pointed a .25 caliber handgun at him, and threatened to kill him. *Id*. at 42:40. The landlord further testified that he was afraid that Petitioner would shoot him. *Id*. at 40:04–44:05.

Later in his testimony, the landlord stated that he sought medical treatment at a hospital following the altercation, but did not stay overnight. *Id* at 52:30. On cross-examination, the landlord admitted that he had no record of the hospital visit. *Id*. at 1:07:30.

During jury deliberations, a 9mm handgun (not the .25 caliber handgun that had been introduced into evidence at trial) was inadvertently allowed into the jury room. When the error was noticed, the trial judge gave a curative instruction to the jury, telling them to disregard the weapon that they had mistakenly been shown. CD Recording of Trial, File No. 20130214-0829_01ce0a8d6d357710 at 3:34–4:30.

The jury found Petitioner guilty of one count of aggravated battery with a deadly weapon (Count 1) and two counts of aggravated assault with a deadly weapon (Counts 2 and 3). [Doc. 11-1] at 1. The Honorable Daniel Viramontes, District Judge for the State of New Mexico's Sixth Judicial District, sentenced Petitioner to eight years of incarceration, five years suspended, for an actual term of three years. *Id*. at 2.

## Procedural Background

Petitioner was incarcerated pursuant to a valid Judgment and Commitment Sentence, filed April 29, 2013, in the Sixth Judicial District Court, County of Luna, State of New Mexico, Cause No. D-619-CR-201100199. [Doc. 11-1] at 1–4. Through counsel, Plaintiff filed a timely

---

the result of his interaction with the landlord's wife, [Doc. 11-1] at 7, but that conviction is not relevant to the claims raised in the Petition.

appeal.  *Id*. at 20.  The New Mexico Court of Appeals proposed summary affirmance on November 7, 2013.  *Id*. at 26.

Petitioner subsequently withdrew his appeal and filed (pro se) a state habeas corpus petition before Judge Viramontes.  [Doc. 11-2] at 1.  The petition, Judge Viramontes explained, alleged that "[Petitioner] did not receive a fair trial because the wrong gun was shown to the jury; and . . . the victim told the police he was taken to the hospital but there was no evidence presented regarding the hospital visit or to show the victim['s] visit to the hospital was [not] merely a 'ploy' to gain sympathy."  *Id*.  Judge Viramontes held that neither ground provided a basis for post-conviction relief, as the issue regarding the gun was the subject of the direct appeal (which he apparently believed was still pending), and the argument regarding the victim's hospital visit was "an argument regarding the sufficiency of the evidence and/or credibility of the evidence."  *Id*.  Judge Viramontes dismissed Petitioner's state habeas petition on April 21, 2014.  *Id*. at 46.

Petitioner then filed a petition for a writ of certiorari to the New Mexico Supreme Court, [Doc. 11-3] at 1, which was denied on June 26, 2014,  [Doc. 11-5] at 1.

Petitioner filed his federal habeas petition on March 30, 2015. [Doc. 1].  Respondents answered on August 11, 2014.  [Doc. 11].  I issued a Proposed Findings and Recommended Disposition on February 4, 2015, recommending that Petitioner be given the option to withdraw his one unexhausted claim and proceed on the remaining claims.  [Doc. 26].  Judge Hansen issued an Amended Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition on April 15, 2015.   [Doc. 33].  Petitioner withdrew the unexhausted claim on

July 16, 2015. [Doc 40]. Respondents subsequently filed an amended Answer on September 21, 2015. [Doc. 48]. Petitioner filed a Reply on October 7, 2015. [Doc. 49].

## Standard for § 2254 Habeas Petitions

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case. A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention. A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). "Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). This standard is "highly deferential" to state courts, and the Supreme Court has noted that it is "difficult to meet," as it requires federal courts to give state court decisions the benefit of the doubt. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA,] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court

decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id*. at 405.  The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature."  *Id*.  Therefore, habeas relief under § 2254 may be granted only where the state court "applies a rule that contradicts the governing law set forth in Supreme Court cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  *Id*. at 405–6.  Significantly, it is unnecessary for the state court to cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]."  *Early v. Packer*, 537 U.S. 3, 8 (2002).

  A state court decision makes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court . . . applied clearly established federal law erroneously or incorrectly."  *Lockyer v. Andrade*, 538 U.S. 63, 75–6 (2003) (internal quotation marks and citations omitted).  "Rather, that application must be objectively unreasonable."  *Id.* at 76.

  Pursuant to AEDPA, state court findings of fact are "presumed to be correct."  § 2254(e)(1).  Accordingly, a petitioner challenging a state court decision based on an unreasonable determination of the facts in light of the evidence presented, *see* § 2254(d)(2), must

show by clear and convincing evidence that the determination was factually erroneous. *See Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

Lastly, where a state court has adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state court. *Pinholster*, 131 S. Ct. at 1398 (citing § 2254(d)(1)). That is, evidentiary hearings are not permitted in federal court on claims that the state court decided on their merits. *Id.* at 1398–99; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted). Thus, summary decisions, even those completely devoid of any reasoning at all, can constitute decisions "on the merits" for purposes of AEDPA. *Harrington*, 131 S. Ct. at 784.

## **Analysis**

Petitioner claims that he is entitled to habeas relief because his conviction resulted from a violation of the *Brady* rule, ineffective assistance of counsel, and prosecutorial misconduct. For analytical convenience, however, his surviving claims fall into four categories. The first category involves the landlord's testimony regarding his alleged hospital visit. [Doc. 1] at 6. The second category concerns the showing of the wrong weapon to the jury during its deliberations. *Id*. at 6–7. The third category involves allegations that the state did not keep proper records of Petitioner's trial. [Doc. 49] at 1. The fourth category alleges the existence of a conspiracy among Petitioner's attorney, the district attorney, and the trial judge. [Doc. 1] at 6–7; [Doc. 49] at 4. Petitioner also seeks an evidentiary hearing. [Doc. 1] at 6; [Doc. 49] at 1.

In order to obtain habeas relief, Petitioner must demonstrate that he suffered some prejudice based on the alleged error in the state court proceeding. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). In determining whether a petitioner for habeas relief has suffered prejudice, courts look to whether the trial error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Id*. Only when a court "is in grave doubt as to the harmlessness of an error that affects substantial rights" should it grant relief under § 2254. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). This standard is more relaxed (and therefore more difficult for petitioners to meet) than the standard applied to claims of constitutional violations brought on direct appeal. *See Chapman v. California*, 386 U.S. 18 (1967).

A showing of prejudice is required for each of the constitutional violations alleged by Petitioner. *See, e.g., Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."); *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (establishing that the standard for ineffective assistance of counsel requires a petitioner to demonstrate (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. To establish prejudice, a petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."); *Green v. Addison*, 500 F. App'x 712, 720 (10th Cir. 2012) (unpublished) (habeas petitioner alleging that prosecutor knowingly offered false testimony must show "(1) 'the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony'; (2) 'the prosecution knew, or should have

7

known, of the perjury'; and (3) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'") (quoting *United States v. Agurs,* 427 U.S. 97, 103 (1976)).  Thus, to succeed here, Petitioner must show not only that each constitutional error occurred, but that he suffered some prejudice due to the error.

**I.      Petitioner was not prejudiced by the victim's testimony about his alleged hospital visit because proof of such a visit was not required.**

Much of Mr. Cummins' Petition centers on what he views as the lack of proof of a hospital visit by the landlord after the altercation.  Petitioner alleges that the landlord "never visited the hospital" and "never suffered any injuries." [Doc. 1] at 9.  Petitioner argues that, had he been given access to hospital files and records, he would have been able to prove that the landlord did not go to the hospital to seek treatment for his injuries.  *Id*. at 10.  Specifically, he believes a "record sign in sheet" from the hospital on the day of the altercation would show that the landlord never went to the hospital.  [Doc. 49] at 3.  He also alleges that the district attorney knew the landlord had testified falsely about the hospital visit.  [Doc. 1] at 6, 10.

Petitioner asserts that the landlord's testimony (that he visited the hospital) violated his constitutional rights in a number of ways.  In Ground Two of his Petition, he characterizes his lack of access to hospital records as a violation of the Fourteenth Amendment and the "*Brady* rule."[2]  [Doc. 1] at 6; [Doc. 49] at 2.  In Ground Three, he characterizes the landlord's testimony regarding his injuries as prosecutorial misconduct, arguing that the district attorney "knew or should have known" that the witness lied about his hospital visit.  [Doc. 1] at 10.  In parts of Ground Four, Petitioner alleges that his counsel was ineffective because he failed to thoroughly

---

[2] Petitioner is referring to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), in which the Supreme Court held that "the suppression of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

8

investigate whether the landlord actually went to the hospital. *Id*. at 12.

However, the landlord's testimony about the alleged hospital visit was not material to his convictions. Petitioner was convicted of two counts of aggravated assault with a deadly weapon and one count of aggravated battery with a deadly weapon. [Doc. 11-1] at 4. New Mexico law only requires proof of an "unlawful touching" for a conviction of aggravated battery with a deadly weapon, while a conviction for aggravated assault with a deadly weapon does not require any proof of touching.[3] In other words, the New Mexico statutes that criminalize the conduct for which Petitioner was convicted do not require evidence that the victim was injured or sought medical care. Thus, the jury was not asked to determine whether the landlord did, in fact, go to the hospital with regard to the charge of aggravated battery[4] or aggravated assault[5] with a deadly

---

[3] In New Mexico, "[a]ggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another. . . . Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony." NMSA § 30-3-5(A), (C). Aggravated assault with a deadly weapon "consists of . . . unlawfully assaulting or striking at another with a deadly weapon." NMSA § 30-3-2(A). Assault consists of "an attempt to commit a battery upon the person of another; any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or the use of insulting language toward another impugning his honor, delicacy or reputation." NMSA § 30-3-1.

[4] The trial judge gave the following instruction regarding Count One (aggravated battery with a deadly weapon):

> For you to find the defendant guilty of aggravated battery with a deadly weapon as charged in Count One, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime: (1) the defendant touched or applied force to [the landlord] by hitting him. The defendant used a hammer. A hammer is a deadly weapon only if you find that a hammer, when used as a weapon, could cause death or bodily harm; (2) the defendant intended to injure [the landlord] or another; (3) the defendant did not act in self-defense; (4) this happened in New Mexico on or about the 14th day of August, 2011. Great bodily harm means an injury to a person which creates a high probability of death or which causes serious disfigurement or which results in permanent or protracted loss or impairment of the function of any member or organ of the body.

CD Recording of Trial, File No. 20130213-1412_01 ce09f42ec844b0 at 2:30.

[5] The trial judge gave the following instruction regarding Count Two (aggravated assault with a deadly weapon):

weapon. In other words, the question of whether the victim went to the hospital was ultimately irrelevant to the jury's verdict because it was not an element of any of the charges of which Petitioner was convicted.

Even if Petitioner were correct that the victim falsely testified about his hospital visit,[6] that the district attorney knew that the victim did not go to the hospital, and that Petitioner's attorney did not thoroughly investigate whether the victim went to the hospital,[7] his Petition would still fail. Proof that a victim sought hospital care is not an element of either of the crimes of which Petitioner was convicted. Thus, he did not—and, in fact, *cannot*—make the showing of prejudice required for relief regarding the victim's testimony.

## II. Petitioner was not prejudiced by the jury's being shown the wrong weapon because proof that Petitioner used a particular firearm was not required.

In parts of Grounds Four and Five of his Petition, Mr. Cummins makes allegations

---

> For you to find the defendant guilty of aggravated assault by use of a deadly weapon, as charged in Count Two, the state must prove to your satisfaction beyond a reasonable doubt, each of the following elements of the crime: The defendant threatened to shoot [the landlord] with a handgun; the defendant's conduct caused [the landlord] to believe that the defendant was about to intrude on [the landlord]'s bodily integrity or personal safety by touching or applying force to [the landlord] in a rude, insolent, or angry manner. (3) A reasonable person in the same circumstances as [the landlord] would have had the same belief. (4) The defendant used a handgun. (5) The defendant did not act in self-defense. (6) This happened in New Mexico on or about the 14th day of August, 2011.

CD Recording of Trial, File No. 20130213-1412_01 ce09f42ec844b0 at 4:00.

[6] It is worth noting that Petitioner makes no effort to explain how he knows that the landlord lied under oath about going to the hospital, other than his assertion that he was not provided with a record of the hospital visit.

[7] During his cross-examination of the landlord, Petitioner's attorney did inquire into the landlord's injuries, asking him whether there were any "lacerations" or "blood," to which the landlord responded that there was not. His attorney also asked whether the landlord had any hospital records or a doctor's note from the day of the altercation. The landlord replied that he had given the records to the "officer." No hospital or other medical records were introduced by either side during the landlord's testimony. CD Recording of Trial, File No. CR 1_2013212-1304_01ce0921861c5ea0 at 1:07:30–1:10.

concerning the jury's being shown a gun from a different case during a "secret in-chambers" meeting. [Doc. 1] at 11–15. According to Petitioner, when a "9mm large caliber handgun" was shown to the jury, one of the jurors realized it was not the weapon that had been referred to throughout the trial. *Id*. at 14.

Contrary to Petitioner's assertions, the record indicates that the showing of the wrong weapon to the jury did not occur during a "secret in-chambers" meeting, but during jury deliberations. [Doc. 11-1] at 29; CD Recording of Trial, File No. 20130214-0829_01ce0a8d6d357710 at 3:34–4:30. This apparently occurred due to court staff error. CD Recording of Trial, File No. 20130214-0829_01ce0a8d6d357710 at 3:34–4:30. After the wrong gun was removed, the trial judge gave a curative instruction, admonishing the jury not to consider the incorrect gun and explaining that it was shown to them in error. *Id*.

Petitioner points to the showing of the wrong weapon both as evidence of ineffective assistance of counsel, [Doc. 1]. at 11, and as proof of a conspiracy among his attorney, the district attorney, and the trial judge, *id*. at 13–15.

However, the jury's being shown the wrong weapon was not material to his convictions. The New Mexico statutes for aggravated assault with a deadly weapon require proof that a deadly weapon was used. NMSA § 30-3-5(A), (C); NMSA § 30-3-1. The New Mexico legislature defines "deadly weapon" as:

> [A]ny firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots,

11

> bludgeons; or any other weapons with which dangerous wounds can be inflicted.

NMSA 1978 § 30-1-12. If a particular object is not listed in the statute, "the question of whether [it] is a deadly weapon should be given to the jury to decide. In addressing this question, the jury should consider the character of the object and the manner of its use." *State v. Traeger*, 130 N.M. 618, 622 (2001).

Because New Mexico does not distinguish between different types of firearms in this context, it was not necessary for the prosecution to prove that Petitioner used a particular kind of firearm in order to sustain a conviction for aggravated assault with a deadly weapon. As noted in footnote 4, *supra*, the trial judge instructed the jury that it needed to find that "the [Petitioner] used a handgun" in order to convict him of aggravated assault with a deadly weapon. CD Recording of Trial, File No. 20130213-1412_01 ce09f42ec844b0 at 4:00. Petitioner does not deny that he used a firearm during the altercation; he alleges only that "no 9mm large caliber handgun was . . . involved in this case." [Doc. 1] at 14.

As for the charge of aggravated battery with a deadly weapon, the trial judge instructed the jury to decide if the defendant "used a hammer" to hit the victim, and further to determine whether a hammer was a deadly weapon within the meaning of the statute. CD Recording of Trial, File No. 20130213-1412_01 ce09f42ec844b0 at 2:30. Thus, the gun was irrelevant to the charge of aggravated battery with a deadly weapon. Because proof of use of a particular firearm was not required for the jury to convict him of either charge, Petitioner has failed to show that the outcome of his trial would have been different if the wrong weapon had not been shown to the jury.

**III.  Petitioner is not entitled to habeas relief with respect to his allegations of conspiracy among his attorney, the district attorney, and the trial judge.**

In parts of Grounds Four and Five of his Petition, Petitioner alleges that his attorney, the district attorney, and the trial judge conspired to deprive him of his constitutional rights. [Doc. 1] at 6–7. He alleges that the showing of the wrong weapon to the jury during its deliberations, *see supra* Section II, along with the district attorney's statement that photographs of the victim's injuries were "lost or destroyed," *id*. at 16, indicate the existence of a conspiracy. In his Reply, he alleges also that his counsel "failed to notify him" of a meeting with the trial judge. [Doc. 49] at 4. These allegations of a conspiracy are both vague and conclusory. *See Weatherall v. Sloan*, 415 F. App'x 846, 849 (10th Cir. 2011) (denying habeas petitioner's request for Certificate of Appealability because he "made no more than vague and conclusory allegations to support his conspiracy claim"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Moreover, Petitioner fails to allege—much less show—that he was prejudiced by the alleged conspiracy. Thus, he does not state a claim on which habeas relief can be granted.

**IV.  Petitioner is not entitled to habeas relief with respect to his allegations of improper recordkeeping at trial.**

Petitioner alleges for the first time in his Reply that the state did not keep proper records of his trial. [Doc. 49] at 1, 4. While it is not completely clear that Petitioner intended to assert a new and separate ground for relief, the Court will liberally construe Petitioner's allegation and consider it as such.

Petitioner must exhaust all available avenues of state court review before a federal court may consider his claims on their merits. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears the applicant has exhausted the remedies available in the courts of the State[.]"). A claim is exhausted where the state courts are given "the opportunity to pass upon and correct alleged violations of [their] prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (internal quotation marks omitted); *see also Picard v. Connor*, 404 U.S. 270, 277 (1971) (finding a claim for relief unexhausted where the petitioner raised the claim in a petition for writ of certiorari to the state's highest court but had not raised the claim in the lower court); *Byrd v. Workman*, 645 F.3d 1159, 1164 n.7 (10th Cir. 2011) (noting that a state's highest court must be presented with a claim before exhaustion occurs), *cert. denied*, 132 S. Ct. 763 (2011). Because he did not raise it in any state court proceeding, Petitioner's claim of improper recordkeeping is unexhausted.

Even so, the Court has the option to "ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit." *Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (internal citations omitted). As discussed previously, Petitioner is required to show prejudice in order to succeed on a petition for habeas relief. Petitioner's claim of improper recordkeeping at trial fails on the merits because he does not allege—much less show—that he was prejudiced by it.

V. **Petitioner is not entitled to an evidentiary hearing.**

Petitioner claims that he is entitled to an evidentiary hearing in this Court because (1) he established a "colorable claim" in state court, and (2) he has never had an evidentiary hearing in

state or federal court. [Doc. 1] at 7. Petitioner's request will be denied for three reasons. First, he does not meet the conditions that make an evidentiary hearing obligatory. Second, his claims were adjudicated on the merits in state court, precluding an evidentiary hearing here. Finally, even if a hearing were permissible, the facts alleged by Petitioner, even if true, would not entitle him to relief, rendering the evidentiary hearing futile.

### a. Petitioner does not meet the conditions that would make an evidentiary hearing mandatory.

An evidentiary hearing on facts not adequately developed in the state court proceedings is obligatory if the petitioner has diligently pursued his habeas corpus claim in state court, the facts alleged would entitle him to relief, and he satisfies one of the six factors enumerated by the Supreme Court in *Townsend v. Sain*, 372 U.S. 293 (1963) (overruled on other grounds by *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992)). Brian R. Means, Federal Habeas Manual, 477–78 (Thomson Reuters 2015). The six factors named in *Townsend* are whether "(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." *Townsend*, 372 U.S. at 313.

Petitioner has not alleged facts in his Petition that were inadequately developed on his state habeas petition, nor does he allege facts showing that his case falls into one of the six *Townsend* categories. His Petition references *Townsend*, but goes no further than stating that he has "never been accorded a state or Federal hearing on his claim." [Doc. 1] at 7. The fact that

15

Petitioner did not receive an evidentiary hearing in his state habeas action does not entitle him to a hearing under any of the *Townsend* factors. Additionally, as discussed further in Section V(c) *infra*, the facts alleged by Petitioner, even if true, do not entitle him to relief. Thus, an evidentiary hearing is not mandatory.

### b. An evidentiary hearing is impermissible because Petitioner's claim was adjudicated on the merits by the state court.

If the state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Pinholster*, 131 S. Ct. at 1398 (citing § 2254(d)(1)). That is, evidentiary hearings are not permitted in federal court on claims that the state courts decided on their merits. *Id.* at 1398–99; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted).

On April 21, 2014, Judge Viramontes dismissed Petitioner's state court habeas petition. [Doc. 11-2] at 46. The petition, Judge Viramontes explained, alleged that "[Petitioner] did not receive a fair trial because the wrong gun was shown to the jury; and . . . the victim told the police he was taken to the hospital but there was no evidence presented regarding the hospital visit or to show the victim['s] visit to the hospital was [not] merely a 'ploy' to gain sympathy." *Id*. Judge Viramontes held that neither ground provided a basis for post-conviction relief. *Id*. Judge Viramontes' ruling constitutes an adjudication on the merits by the state court. Thus, an evidentiary hearing is not permitted at this stage.

### c. The facts alleged by Petitioner, even if true, would not entitle him to relief, rendering an evidentiary hearing futile.

Even if the Court took the position that Petitioner's claim had not been adjudicated on the merits by the state courts, an evidentiary hearing would be of no use. "An evidentiary hearing is unnecessary where the allegations, as alleged by petitioner, do not state a claim for which habeas relief may be granted." Means at 48 (citing *Richardson v. Penn. Bd. of Probation and Parole*, 423 F.3d 282, 293 (3d Cir. 2005); *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982)). The facts alleged by Petitioner do not state a claim on which relief can be granted. *See supra* Sections I–IV. Even if every fact alleged in his Petition were true, he would not be entitled to habeas relief; thus, an evidentiary hearing would be futile.

### CONCLUSIONS AND RECOMMENDED DISPOSITION

For the reasons set forth herein, I respectfully recommend that the Petition under § 2254 [Doc. 1] be **DENIED**, and that Petitioner's action be **DISMISSED WITH PREJUDICE**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**